IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANA LORENA HERNANDEZ,<br><br>Plaintiff,<br><br>v.<br><br>GOLDEN GATE REGIONAL CENTER, et al.,<br><br>Defendants. | Case No. 24-cv-04668-MMC<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

Before the Court are the following two motions: (1) defendant Golden Gate Regional Center's ("GGRC") "Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)," filed December 27, 2024; and (2) defendant Aveanna Healthcare, LLC's ("Aveanna") "Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule 12(b)(6)," filed December 27, 2024. Plaintiff Juana Lorena Hernandez ("Hernandez"), who proceeds pro se, has filed a single opposition to both motions, to which Aveanna and GGRC have filed separate replies. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

In the First Amended Complaint ("FAC"), Hernandez alleges she was employed by GGRC and Aveanna, along with James Cheng ("Cheng"), who is not a party to the instant action, to provide "respite services to Cheng's adult son." (See FAC ¶ 7.) According to Hernandez, Cheng, during the course of the employment, "made inappropriate sexual advances or requests of [Hernandez]." (See FAC ¶ 13.)

---

[1] By order filed March 24, 2025, the Court took the matters under submission.

Additionally, Hernandez alleges, GGRA and Aveanna "terminated [Hernandez] at the instruction of Cheng" (see FAC ¶ 15) and, she contends, "[i]llegal sex discrimination and sexual harassment on account of [Hernandez's] sex constituted a significant motivation for [Hernandez's] termination and discharge by Cheng" (see FAC ¶ 24). Based on said allegations, Hernandez, as her First Claim, asserts violations of Title VII, and, as her Second Claim, violations under state law.[2]

By order filed November 18, 2024, the Court dismissed Hernandez's claims as alleged in her initial complaint. In particular, the Court dismissed Hernandez's Title VII claims on multiple grounds, including that her claims are barred by the applicable statute of limitations, and afforded Hernandez leave to amend to allege, inter alia, facts to support a finding that an exception to the statute of limitations exists. Additionally, in light of the dismissal of the Title VII claims, which were the sole claims over which the Court had original jurisdiction, the Court declined to exercise jurisdiction over Hernandez's state law claims, and dismissed them without prejudice to Hernandez's filing them in state court or reasserting them in an FAC.

Hernandez subsequently filed her FAC, in which she amended her Title VII and state law claims. Defendants, by the instant motions, contend Hernandez has failed to allege any basis to find her Title VII claims are timely or that she is entitled to equitable tolling. As set forth below, the Court agrees.[3]

Title VII "specifies with precision" the "prerequisites that an individual must satisfy before he is entitled to institute a lawsuit," the first of which is that the plaintiff must have "filed timely a charge of employment discrimination with the [EEOC]," and the second of

---

[2] Hernandez's state law claims are based on the additional allegation that, during the course of her employment, she "reported to GGRC at least two instances of suspected physical abuse by Cheng against his son" (see FAC ¶ 14), which reports, she contends, resulted in a further unlawful ground for her termination, namely, retaliation (see FAC ¶¶ 34, 36).

[3] In light of this finding, the Court has not addressed herein defendants' additional arguments in support of dismissal.

2

which is that the plaintiff must have "received and acted upon the [EEOC's] statutory notice of the right to sue."  See Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974).  The effect of these two prerequisites is to create "two limitations periods for Title VII claims."  See Scott v. Gino Morena Enterprises, LLC, 888 F.3d 1101, 1106-07 (9th Cir. 2018).

With respect to the first of those two limitations periods, which is the focus of defendants' motions to dismiss, the plaintiff must file a "charge" with the EEOC within 180 days "after the alleged unlawful employment practice occurred," which deadline is extended to 300 days if the plaintiff initially files a charge with a state agency "that has authority to grant or seek relief from such practice," see 42 U.S.C. § 2000e-5(e)(1), which agency, in California, is the Civil Rights Department ("CRD").[4]

Here, Hernandez alleges she was terminated on July 7, 2022 (see FAC ¶ 15), which is the latest date on which it could be said the practices challenged by Hernandez occurred, and that she filed a charge with the CRD on January 23, 2023.  (See FAC ¶ 19.)

Under a "worksharing agreement" between California and the EEOC, a charge filed with the CRD is "deemed to have been received by the EEOC on the same day" it is filed with the CRD, see Green v. Los Angeles County Superintendent of Schools, 883 F.2d 1472, 1476 (9th Cir. 1989), where the charges filed with the CRD "include at least one claim over which the EEOC has concurrent jurisdiction, see Cal. Code Regs. tit. 2, § 10019 (providing for "dual-fil[ing]" of charges).  Here, however, the CRD appears to have found the terms of the worksharing agreement were inapplicable to Hernandez's charge, as the CRD stated in its right-to-sue notice dated August 14, 2023, that said charge "[was] not dual filed" with the EEOC (see Pl.'s Opp., filed February 10, 2025, Ex. 1),[5] a

---

[4] The second limitations period, which pertains to the deadline to file suit after exhausting administrative remedies is 90 days from receipt of a right-to-sue notice from the EEOC.  See Scott, 888 F.3d at 1111-12.

[5] The Court takes judicial notice of the CRD's right-to-sue notice, which Hernandez has filed.  (See id.); Adetuyi v. City and County of San Francisco, 63 F. Supp. 3d 1073,

determination Hernandez has not challenged.[6] Consequently, Hernandez was required to have filed a charge with the EEOC no later than 300 days after July 7, 2022, namely, May 3, 2023.

The record indicates that, after her termination on July 7, 2022, Hernandez filed, in addition to the above-referenced charge with the CRD, two other charges.[7] First, on either September 11, 2023, or April 15, 2024, Hernandez filed a charge with the EEOC.[8] Second, on April 23, 2024, Hernandez filed a second charge with the CRD, which second charge the CRD dual-filed with the EEOC that same day. (See FAC Ex. 7.) As the above three dates are all beyond May 3, 2023, however, Hernandez's Title VII claims, in the absence of an exception to the statute of limitations, are time-barred.

As noted, the Court dismissed Hernandez's Title VII claims as alleged in the initial complaint, noting the claims were, as pleaded, time-barred by reason of her failure to file a timely charge with the EEOC. Although, as also noted, the Court afforded Hernandez leave to amend, Hernandez has not endeavored to plead any facts to support a finding that she timely filed a charge with the EEOC. Rather, in the FAC, Hernandez has added factual allegations regarding the last of the three charges she filed, namely, allegations that (1) the charge she filed with the CRD on April 23, 2024, was "dual filed" with the

---

1080-81 (N.D. Cal. 2014) (taking judicial notice of right-to-sue notice issued by state agency).

[6] Although the basis for such determination is not expressly stated in the record before the Court, at least one potential reason is that the notice reflects a charge made against a single individual, James Cheng, as the employer (see id.) and the EEOC's jurisdiction is limited to employers having no less than fifteen employees, see E.E.O.C. v Commercial Office Products Co., 486 U.S. 107, 119 n.5 (1998) (explaining "Title VII does not give the EEOC jurisdiction to enforce the Act against employers of fewer than 15 employees").

[7] The content of the charges referenced in the FAC has not been described or otherwise provided to the Court.

[8] In her initial complaint, Hernandez alleged she filed a charge with the EEOC on April 15, 2024 (see Compl. ¶ 8), but in her oppositions to the motions to dismiss the initial complaint, Hernandez stated she filed said charge on September 11, 2023 (see Pl.'s Opp [Doc. No. 27] at 3:1; Pl.'s Opp. [Doc. No. 30) at 4:8).

1  EEOC, (2) the EEOC, having received said charge, issued, on May 6, 2024, a right-to-
2  sue notice, and (3) she filed the instant action within ninety days from the date of the
3  issuance of the EEOC's right-to-sue notice.  (See FAC ¶¶ 19-22.)  Those allegations,
4  however, fail to show Hernandez filed her charge with the EEOC no later than 300 days
5  from the date on which the alleged unlawful employment practice occurred.

6  Accordingly, the First Claim is subject to dismissal for failure to allege any facts to
7  support a finding that Hernandez timely submitted a charge to the EEOC.

8  In her opposition, Hernandez requests she be afforded a further opportunity to
9  amend.  In support of this request, Hernandez sets forth a theory as to why she is entitled
10 to equitable tolling as to the running of the first of the two Title VII limitations periods.
11 Specifically, Hernandez cites California law providing that California's "'equitable tolling'
12 doctrine . . . tolls statutes of limitations when defendants would not be prejudiced and
13 plaintiffs, who had several legal remedies, pursued one such remedy reasonably and in
14 good faith."  See Downs v. Department of Water & Power, 58 Cal. App. 4th 1093, 1100
15 (1997).  In reliance on such doctrine, Hernandez argues that the 300-day deadline to file
16 a charge with the EEOC should be equitably tolled during the period of time her first CRD
17 charge was pending.  Hernandez, however, cites no authority applying California's
18 equitable tolling doctrine in the manner she advocates.

19 Moreover, where Congress has created a federal statute containing a statute of
20 limitations, the "proper test" for determining whether the limitations period should be
21 equitably tolled is "whether tolling the [time] limitation in a given context is consonant with
22 the legislative scheme."  See American Pipe & Const. Co. v. Utah, 414 U.S. 538, 557-58
23 (1974).  In that regard, the United States Supreme Court has considered and rejected as
24 inconsistent with Title VII's legislative scheme the very argument advanced by
25 Hernandez, namely, that the 300-day limitations period set forth in § 2000e-5(e) should
26 be equitably tolled during the period the state agency is considering the claim.  In
27 particular, in International Union of Electrical, Radio & Machine Workers v. Robbins &
28 Myers, Inc., 429 U.S. 229 (1976), the Supreme Court held that, in providing for a

statutory extension of time to file a charge with the EEOC when the plaintiff has first filed a charge with a state agency, "Congress firmly limited the maximum possible extension of the limitations period" and "did not leave to courts the decision as to which delays might or might not be 'slight'." See id. at 240.  Additionally, as the Supreme Court subsequently has explained, where a plaintiff initially files a charge with a state agency, Congress has determined that "the EEOC has a duty to commence its investigation no later than 300 days after the alleged occurrence" and "[courts] may not simply interject an additional [time] period into the procedural scheme." See Mohasco Corp. v. Silver, 447 U.S. 807, 817, 825-26 (1980) (holding EEOC charge filed 351 days after date of unlawful employment practice was untimely; stating, it is "not [a court's] place simply to alter the balance struck by Congress"); see also Daughtry v. King's Dep't Stores, Inc., 608 F.2d 906, 909 (1st Cir. 1979) (holding, where plaintiff initially filed charge with state agency that did not issue right-to-sue notice for six years, plaintiff's subsequent filing of charge with EEOC did not present "situation which argues for an equitable tolling"; noting "Congress has already provided an exception for state agency delay in the § 2000e-5(e) time limits").

Accordingly, the Court finds further leave to amend the First Claim is not warranted, and the First Claim will be dismissed without further leave to amend.

Lastly, as Hernandez's Title VII claims are subject to dismissal, and the above-titled action remains at the pleading stage, the Court declines to exercise supplemental jurisdiction over Hernandez's Second Claim, by which she asserts violations of state law. See 28 U.S.C. § 1367(c)(3) (providing district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988) (holding "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims").

Accordingly, the Second Claim will be dismissed, without prejudice to Hernandez's asserting it in state court.

### CONCLUSION

For the reasons stated above, defendants' motions to dismiss are hereby GRANTED, as follows:

1. The First Claim is hereby DISMISSED without further leave to amend.

2. The Second Claim is hereby DISMISSED without prejudice to refiling in state court.

**IT IS SO ORDERED.**

Dated: April 8, 2025

MAXINE M. CHESNEY
United States District Judge